IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SYNGENTA SEEDS, INC., ET AL. | ) | CIV. NO. 14-00014BMK |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING MOTION OF |
| | ) | KA MAKANI HOʻOPONO, |
| vs. | ) | CENTER FOR FOOD SAFETY, |
| | ) | PESTICIDE ACTION NETWORK |
| COUNTY OF KAUAI | ) | OF NORTH AMERICA, AND |
| | ) | SURFRIDER FOUNDATION TO |
| Defendant. | ) | INTERVENE |
| _____ | ) | |

ORDER GRANTING MOTION OF KA MAKANI HOʻOPONO, CENTER FOR
FOOD SAFETY, PESTICIDE ACTION NETWORK OF NORTH AMERICA,
<u>AND SURFRIDER FOUNDATION TO INTERVENE</u>

Before the Court is Ka Makani Ho'opono, Center for Food Safety,

Pesticide Action Network of North America, and Surfrider Foundation's

("Intervenors") Motion to Intervene.   [Doc. 24.]   Intervenors seek intervention as

of right under Federal Rules of Civil Procedure ("FRCP") Rule 24(a)(2), or

alternatively, seek permissive intervention under FRCP Rule 24(b)(2).   The Court

heard this Motion on April 14, 2014.   After careful consideration of the Motion, the

supporting and opposing memoranda, and the arguments of counsel, the Court

GRANTS this Motion to intervene as of right.

<u>FACTUAL BACKGROUND</u>

In this action, Plaintiffs Syngenta Seeds, Inc., Syngenta Hawaii, LLC, Pioneer Hi-Bred International Inc., Agrigenetics, Inc., and BASF Plant Science LP ("Plaintiffs") seek to invalidate Kauai County Ordinance 960 relating to pesticides and genetically modified organisms. Ordinance 960, now codified as Kauai County Code § 22-22 (2013), contains three operative provisions.

First, section 22-22.4 requires the mandatory disclosure of the use of "restricted use" pesticides and the possession of genetically modified organisms ("GMO") by "commercial agricultural entities." The pesticide disclosure provision requires pre-application notification to any "requesting" persons within 1,500 feet of the property where the pesticide will be applied, and weekly post-application public disclosure reports containing the pesticide used, locations of use, quantity applied, and environmental conditions at the time of application such as wind speed and direction and temperature. Sections 22-22.4(a)(2), (3). The GMO notification provision requires annual reports to include a general description of the crop and its geographic location and the dates that each GMO crop was introduced to the land in question. Section 22-22.4(b).

Second, section 22-22.5 requires "commercial agricultural entities" to establish pesticide buffer zones between crops to which restricted use pesticides are

applied and surrounding properties.   Section 22-22.5(a)(1).   The size of the required buffer zone varies depending on the type of neighboring property in question.   For example, a 500 foot buffer zone is required for schools while a 100 foot buffer zone is required for roadways, shorelines, or waterways that flow into the ocean.   See sections 22-22.5(a)(1), (4), (5).   Violations of either the disclosure or buffer zone provisions "shall" result in civil fines of $10,000-$25,000 per day. Section 22-22.7.

Third and finally, section 22-22.6 requires the County of Kauai to complete an Environmental and Public Health Impact Study ("EPHIS") to address "environmental and public health questions related to large scale commercial agricultural entities utilizing pesticides and genetically modified organisms."

Broadly speaking, Plaintiffs contend that Section 22-22 is preempted by state and federal law regulating pesticide use and GMO crops, violates state and federal rights to due process and equal protection by imposing burdensome operational restrictions and penalties, and effectuates a taking of Plaintiff's property by creating "arbitrary" buffer zones without good cause or just compensation. [Complaint, Doc. 1 at 4-5.]   In addition to these substantive claims, Plaintiff's also raise a procedural claim asserting that section 22-22 was unlawfully adopted in violation of Hawaii Revised Statutes ("HRS") Chapter 92, Hawaii's Open Meeting

Law.

Bill 2491, which would eventually become Section 22-22 of the Kauai County Code, was initially passed by a Kauai County Council vote of six to one after an eighteen hour public hearing. After passing the bill, council woman Nadine Nakamura resigned her counsel seat to take a position in the administration Kauai Mayor Bernard P. Carvalho, Jr., leaving a council vacancy. Mayor Carvalho subsequently vetoed Bill 2491 stating that he strongly believed that the bill was legally flawed. [Motion, Exh. 3, Mayor's press release.] Mayor Carvalho stated that his decision to veto the bill was substantially based on the Kauai County Attorney's legal opinion there was a "strong likelihood" that the bill would be preempted by state and federal law, and also that it was an invalid use of the county's police power. [Motion, Exh. 4, County Attorney Memorandum at 71.]

On November 16, 2013, after selecting a new council member to fill Nakamura's vacant seat, the County Council voted 5 to 2 to override the Mayor's veto by super majority. The ordinance is scheduled to take effect on August 16, 2014. Ordinance 960 § 4. In January of 2014, Plaintiff filed the instant action to enjoin its enforcement.

Initially, the County of Kauai solicited pro bono legal representation to defend Ordinance 960. However, the County's solicitation, which required that

any pro bono counsel also bear the costs of litigation, failed to secure legal representation. Subsequently, the County Council approved a request for $75,000 for paid legal representation. At the time Intervenors filed the Motion now before the Court, the County had not yet obtained representation. Prior to the filing of Plaintiff's Opposition, however, the County obtained the services of the Hawaii law firm McCorriston, Miller, Mukai, and MacKinnon to defend this action.

Intervenors now seek to intervene in this suit as of right, or alternatively with permission of the Court. Ka Makani HoʻOpono is a community group composed of residents of west Kauai where the Plaintiffs' operations are mainly located. [Motion at 13-1, Decl. Malia Chun ¶ 7.] The Center for Food Safety ("CFS") is a national public interest organization representing more than 400,000 members including "hundreds of Kauai residents." [Motion, Decl. Andrew Kimbrell ¶ 2.] CFS's stated goal is to protect "public health and the environment from the harms of industrial agriculture," including "pollution from pesticides, water and air contamination from factory farming, and biological and ecosystem contamination from genetically engineered organisms." [Id. at ¶ 3.] Pesticide Action Network North America, ("PANNA") is an international coalition of public interest groups with more than 110,000 members in the United States and 1,330 members on Kauai. [Motion, Decl. of Paul Towers ¶ 1.] PANNA works "to

replace the use of hazardous pesticides with healthier, ecologically-sound pest management methods," and "provides scientific experts, public education and access to pesticide data and analysis." [Id.] The Surfrider Foundation is an international chapter based environmental organization with a chapter on Kauai. [Motion, Decl. of Gordon Labedz ¶ 2.] One of Surfrider's primary programs is its water quality campaign which is concerned with the impact of "pesticide-intensive genetically engineered crops" and their impact on "wetlands, streams and rivers that filter water" before it reaches coastal beaches and reefs. [Id. ¶¶ 3, 5.] Proposed Intervenors generally assert that intervention is appropriate because the County "does not share, and will not adequately represent, Proposed Intervenors' particular interests." [Motion at 2.]

DISCUSSION

I.    INTERVENTION AS OF RIGHT.

Federal Rules of Civil Procedure ("FRCP") Rule 24(a)(2) provides in relevant part that,

> On timely motion, the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 is to be liberally construed in favor of the party seeking intervention, Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003), because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." Wilderness Soc'y. v. U.S. Forest Service, 630 F.3d 1173, 1179 (9th Cir. 2011); see also In re Estate of Ferdinand E. Marcos Human Rights Litigation, 536 F.3d 980, 985 (9th Cir. 2008) ("the requirements for intervention are broadly interpreted in favor of intervention.").

When analyzing a motion to intervene as of right under FRCP Rule 24(a)(2), this Court applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Wilderness Soc'y, 630 F.3d at 1177. In applying this test, "courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). Because Plaintiffs do not contest the timeliness of Intervenors' motion, the Court addresses only the remaining three

7

factors.

A.    Significantly Protectable Interests.

An applicant seeking intervention has a "significantly protectable interest" in an action if:

> (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant. The "interest" test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the "interest" test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

In re Estate of Ferdinand E. Marcos Human Rights Litig., 536 F.3d 980, 984-85 (9th Cir. 2008) (citing Southern California Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002).

Intervenors assert they have a significantly protectable interest relating to the subject of this litigation because: 1) they are public interest groups that vigorously supported the passage ordinance 960; and 2) the individual members of Intervenors' organizations live and work in areas directly affected by the agricultural activities of the Plaintiffs.   The Court holds that each of these asserted interests is a "significantly protectable interest" sufficient to justify intervention as of right.

"A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) (citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir.1983) and Washington State Bldg. & Constr. Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir.1982), cert. denied, Don't Waste Washington Legal Defense Foundation v. Washington, 461 U.S. 913 (1983).

Additionally, where proposed intervenors assert an interest in environmental actions affecting their members, courts have generally found a significantly protectable interest to exist for purposes of intervention as of right. See e.g., American Farm Bureau Federation v. U.S. EPA, 278 F.R.D. 98, 106 (M.D. PA 2011) (holding environmental group whose members used the waters of Chesapeake Bay for aesthetic and recreational purposes had a significantly protectable interest in litigation challenging EPA Clean Water Act restrictions); California Dump Truck Owners Association v. Nichols, 275 F.R.D. 303, 306-7 (E.D. Cal. 2011) (holding that environmental group whose members benefited from improved air quality under regulations restricting truck emissions had sufficient interest in litigation attacking those regulations for purposes of intervention).

Here, Intervenors live and work in close proximity to the agricultural

operations of the Plaintiffs.   Intervenors contend Ordinance 960 will eliminate or

decrease their exposure to allegedly harmful restricted use pesticides associated with

those operations.   Just as people using Chesapeake Bay had an interest to upholding

clean water restrictions and an environmental group composed of California

residents had an interest in maintain air quality, Intervenors have a "significantly

protectable interest" in limiting their exposure to allegedly toxic chemicals.[1]

Plaintiff's only argument against the Intervenors' assertion of a

significantly protectable interest is that Intervenors are national environmental

organizations without connection to Kauai County and that the Kauai based

intervenor is not a registered entity with the Department of Commerce and

Consumer Affairs.   Plaintiffs, however, present no evidence to contradict the

declarations of Intervenors' members that attest to the connections between Kauai

residents and these organizations, and present no authority for the assertion that the

local intervenor must be registered with the state.   Accordingly, the Court finds

Plaintiffs' argument on this point unavailing.

B.    <u>Disposition of the Action and Impairment of Interest</u>.

If a proposed intervenor "would be substantially affected in a practical

sense by the determination made in an action, he should, as a general rule, be entitled

---

[1] As noted previously, for purposes of intervention the Court generally accepts the movants' allegations as true. Accordingly, the Court's holdings as to the nature of the Intervenors' interests do not necessarily speak to the ultimate merits of the case.

to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) (quoting FRCP Rule 24 Advisory Committee Notes). The court's analysis focuses on the "future effect pending litigation will have" on the intervenors' interests. Parker v. Nelson, 160 F.R.D. 118, 122 (D. Neb. 1994). Notably, "the question of impairment is not separate from the existence of an interest," Natural Resources Defense Council, Inc., v. U.S. Nuclear Regulatory Commission, 578 F.2d 1341, 1345 (10th Cir. 1978), and "generally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest." Jackson v. Abercrombie, 282 F.R.D. 507, 517 (D. Haw. 2012) (citing Lockyer v. United States, 450 F.3d 436, 442 (9th Cir. 2006).

Having found that the Intervenors have a significantly protectable interest in the practical protections offered by Ordinance 960, it naturally follows that the invalidation of Ordinance 960 would impair those interests.

C.     Adequacy of Representation by the County of Kauai.

The Fourth prong of FRCP Rule 24, pertaining to the inadequacy of representation, is satisfied "if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 540 n.10 (1972); see also Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003).

Notwithstanding this generally permissive rule, a rebuttable presumption of adequate representation arises where an existing party and the applicant for intervention "share the same ultimate objective," Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 898 (9th Cir. 2011), or where the government is acting on behalf of a constituency that it represents." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003).   Where a presumption of adequate representation arises, the applicant must make a "compelling showing" to the contrary.   Citizens for Balanced Use, 647 F.3d at 898.

In evaluating the adequacy of representation, the Court examines three factors,

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 952 (9th Cir. 2009).   In analyzing these factors, the adequacy or inadequacy of representation is judged by analysis of the existing parties, not by the qualifications of counsel retained by the parties.   See Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 529 (9th Cir. 1983).

Intervenors assert two principle arguments as to why the County will not adequately represent their interests.   First, Intervenors assert that their interests

12

and the County's interests are not synonymous.   Intervenors argue that their members, who live in close proximity to the Plaintiffs' agricultural activities have "personal health interests" in upholding Ordinance 960 that "are narrower and more personal than the County's general desire to defend its own legislation." Intervenors argue that the County government represents multiple constituencies including the business and economic interests of the Plaintiffs and their employees. Accordingly, Intervenors assert that the County's public health concerns are tempered by the need to balance regulation with economic and political considerations, while Intervenors' "personal health interests" are not qualified in this manner.

Second, Intervenors argue that the actions of Mayor Carvalho demonstrate that his administration may not vigorously defend Ordinance 960. Intervenors point out that the Mayor vetoed Bill 2491 and publically declared the Ordinance "legally flawed" and "legally indefensible."   In addition to the Mayor's public antipathy toward Ordinance 960, Intervenors also argue that both the Mayor and County Council's public expressions of budgetary concerns over the cost of litigation call into question how vigorously the County can or will defend the law.

In opposition, Plaintiffs contend that the Intervenors have failed to show how their interests diverge from the interests of the public at large.   Plaintiffs

also appear to argue that the strong presumption that the government adequately represents the interest of intervenors is only overcome where the government expressly abandons valid arguments or shows an intent not to defend against a lawsuit at all.

While it is clear that Intervenors and the County, by its recent actions retaining counsel and mounting a defense against Plaintiffs' claims, both share the common interest of upholding the constitutionality of Ordinance 960 and thus "share the same ultimate objective," this is not the end of the Court's analysis.

1.    Divergence of Interests.

The Ninth Circuit has held the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general public."  Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1499 (9th Cir. 1995) (abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173 (9th Cir. 2011).

In Forest Conservation Council, an environmental organization brought suit against the Forest Service to enjoin it from implementing a management plan in a critical habitat area until the Forest Service had complied with the National Environmental Policy Act.  Id. at 1491.  The State of Arizona moved to intervene

to prevent the suspension of the management plan because suspension would halt logging activities that generated income for the state, and would halt three recreational improvement projects. Id. The Ninth Circuit reversed the district court's denial of intervention holding that although both the Forest Service and the State sought the same ultimate result, Forest Service was required to represent the broad public interest and was primarily concerned with procedural compliance under NEPA, while the state was concerned with the economic interests of the timber industry. Id. at 1499. Accordingly, the state "satisfied the minimal showing required that the Forest Service may not adequately represent their interests." Id.

Similarly, in Californians For Safe & Competitive Dump Truck Transp. v. Mendonca the Ninth Circuit held that proposed intervenors overcame the presumption of adequate representation by the government because their interests were "potentially more narrow and parochial than the interests of the public at large." Californians For Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1190 (9th Cir. 1998). There an Association of motor carriers sought to prevent the enforcement on federal preemption grounds of California's Prevailing Wage Law, which mandated increased wages for truck drivers. Although the state defended the law, the Ninth Circuit nonetheless upheld the district court's grant of

intervention as of right for union drivers who were the beneficiaries of the higher wages required under the law.   Id.   Because the employment interests of the union members were "potentially more narrow and parochial than the interests of the public at large," union members demonstrated that the representation of their interests by the state "may have been inadequate."   Id.

Also, in Southwest Center for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001), the Ninth Circuit held that intervention as of right was appropriate even though the City and proposed Construction industry intervenors shared the same ultimate objective of defending the City's land management plan against an environmental challenge.   While the City's "range of considerations" in development was broad, the intervening developers were animated by their profit motives and private interests.   Id. at 823.   Contrary to the district court ruling denying intervention, the Ninth Circuit held it was immaterial that the intervenors had not identified any specific argument that the City was either incapable or unwilling to make.   Id.   Rather, it was sufficient for developers to show that "because of the difference in interests, it is likely that Defendants will not advance the same arguments."   Id. at 824.

Each of these Ninth Circuit cases demonstrates, contrary to Plaintiffs' argument, that clear governmental opposition or abandonment of an issue or claim is

not required to rebut the presumption of adequate representation. Even where the government and a proposed intervenor share the same "ultimate objective," their underlying interests may differ sufficiently to justify intervention. Here, the proposed Intervenors are, or represent, individuals directly affected by the activities of the Plaintiffs and by the restrictions on those activities encompassed by Ordinance 960. Like the union drivers benefiting from a higher wage in Californians For Safe & Competitive Dump Truck Transp., the Kauai residents living next to Plaintiffs' fields are the direct recipients of the purported benefits of Ordinance 960. Their interests in upholding the law are decidedly more palpable than the County's generalized interest.

As in Southwest Center for Biological Diversity, it is immaterial at this point of the litigation that the Intervenors' proposed answer to Plaintiffs' complaint and the County's do not decidedly differ, because the Court's analysis is based upon a divergence of interests and possible future arguments, not presently identified differences.

2.    Diligence of Representation.

In addition to a divergence of interest, Intervenors argue that Mayor Carvalho's antipathy to Ordinance 960 and the County's possible budgetary constraints further support a finding of inadequate representation. The Court

agrees.

In <u>Sagebrush Rebellion</u> the Department of Justice, as counsel for the
Department of the Interior, acted "professionally and diligently" to defend a suit
challenging the Interior Department's creation of a conservation area.   <u>Sagebrush
Rebellion,</u> 713 F.2d at 528.   The Ninth Circuit nonetheless reversed the District
Court's denial of an environmental group's motion to intervene in part because
Secretary of the Interior James Watt had previously opposed the creation of the
conservation area in question.   <u>Id.</u> at 529.   Notwithstanding the fact that the
Department of Justice clearly had the capacity to conduct the litigation, the court
held "its role is not totally independent of the administration's concerns" and thus
the prior position of Secretary Watt was relevant to the adequacy of representation.
<u>Id.</u>   It was immaterial that there was no record of collusion or any other conduct
detrimental to the proposed intervenor's interest.   The Secretary's prior opposition
was sufficient under the "minimal" standard required to show that representation of
the intervenor's interests "may be inadequate."   <u>Id.</u>   Here, although Mayor
Carvalho has indicated his administration will defend Ordinance 960 as required by
law, his prior opposition to the law is sufficient under the <u>Sagebrush</u> standard to find
that the County "may not" adequately represent the interests of the Intervenors.   <u>See
also</u>, <u>Jackson v. Abercrombie</u>, 282 F.R.D. 507, 519 (D. Haw. 2012) (holding that

although Director of the Department of Health and State Attorney General's Office acted to defend the constitutionality of Hawaii's "marriage amendment, the Governor's opposition to the "marriage amendment" was sufficient to show that intervenor's interests in upholding the amendment "may not be adequately represented.")

Similarly, the Court finds that, while not determinative, the County's express acknowledgment of the financial burden associated with defending Ordinance 960 militates toward a finding that the County's representation of the Intervenors' interests "may be" inadequate.   See Prete v. Bradbury, 438 F.3d 949, 958 n.10 (9th Cir. 2006) (recognizing that evidence of budgetary constraints that impact the government's ability to adequately litigate its position may support a motion to intervene as of right).   Because the Intervenors do not have similar budgetary constraints this factor further tilts the balance toward allowing intervention.

In sum, under the permissive standards for intervention established by the Ninth Circuit, the Court holds that Intervenors have satisfied the four-part test to intervene as of right under FRCP Rule 24(a)(2).   Intervenors' motion was timely, Intervenors have demonstrated they have a significantly protectable interest that may be impaired by this action, and Intervenors have shown that the County "may

not" adequately represent their interests.   Because the Intervenors are entitled to intervene as of right, the Court refrains from addressing their alternative claim for permissive intervention.

Having granted intervention as of right, the Intervenors become parties entitled to litigate fully on the merits.   Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Cal. 1954).   Notwithstanding Intervenors' full party status, courts have broad discretion to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."   FRCP Rule 26(b)(2)(C); see also Campbell Industries v. M/V Gemini, 619 F.2d 25, 27 (9th Cir. 1980) ("A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.").

At the hearing on Intervenors' Motion, counsel agreed that early discovery is not necessary, and that it is likely the issues presented in this case can be determined as a matter of law.   The Court accordingly established a schedule for the filing and disposition of motions to dismiss and or for summary judgment.   In the event a party desires to conduct discovery, the Court at that time will consider whether to impose restrictions on the scope of discovery and the manner in which it is conducted to ensure the efficient adjudication of the litigation and to minimize

delay and undue burden and expense.

CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Intervene as of right.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 23, 2014



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Syngenta Seeds, Inc., et al. v. County of Kauai, CIV. NO. 14-00014 BMK, ORDER GRANTING MOTION OF KA MAKANI HO'OPONO, CENTER FOR FOOD SAFETY, PESTICIDE ACTION NETWORK OF NORTH AMERICA, AND SURFRIDER FOUNDATION'S MOTION TO INTERVENE